USDC SCAN INDEX SHEET

















```
CAG   7/29/03   13:51
3:03-CV-01460   PARTNOY V. SHELLEY
*12*
*MEMOPNO.*
```

FILED

JUL 29 2003

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                         DEPUTY

1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  FRANK PARTNOY, an individual;              CASE NO. 03CV1460 BTM (JFS)
    LAURA ADAMS, an individual; PETER
12  STRIS, an individual; JASON WILSON,        MEMORANDUM DECISION AND
    an individual; and CALIFORNIA             ORDER GRANTING MOTION ON
13  INFORMED VOTERS GROUP, an                  THE PLEADINGS AND DECLARING
    unincorporated association,                CALIFORNIA ELECTIONS CODE §
14                                             11382 UNCONSTITUTIONAL
                                 Plaintiffs,
15
            vs.
16
    KEVIN SHELLEY, in his official capacity
17  as Secretary of State for the State of
    California; SALLY MCPHERSON, in her
18  official capacity as the Registrar of
    Voters for the County of San Diego; and
19  CONNY MCCORMACK, in her official
    capacity as the Registrar-Recorder/
20  County Clerk for the County of Los
    Angeles,
21
                                Defendants.
22  **I.     INTRODUCTION**

23          This case involves the recall election of California Governor Gray Davis which is

24  currently set for October 7, 2003.  By bringing this suit Plaintiffs are not, however, trying to

25  halt or delay the recall election.  Rather, Plaintiffs seek to have one discrete provision of the

26  California Elections Code, involving how the votes are to be counted, declared

27  unconstitutional.  The challenged provision, section 11382 of the California Elections Code,

28  states that "No vote cast in the recall election shall be counted for any candidate unless the



ENTERED ON 7-29-03

1  voter also voted for or against the recall of the officer sought to be recalled." The question
2  before the Court is whether this provision violates Plaintiffs' First and Fourteenth Amendment
3  rights of free expression and their right to vote for the person who will govern them.

4  **II.    BACKGROUND**

5       On July 23, 2003, the California Secretary of State certified that a petition to recall
6  Governor Gray Davis had obtained the requisite number of signatures to require a recall
7  election ("the Davis Recall").  Consistent with California law, Lieutenant Governor Cruz
8  Bustamante set an election date of October 7, 2003.  On July 23, 2003, Plaintiffs filed the
9  instant lawsuit seeking to enjoin the enforcement of California Elections Code § 11382
10 ("section 11382") and a declaration that section 11382 violates the United States
11 Constitution.  On July 24 and 25, 2003, the Court held several status conferences to
12 coordinate the proceedings in this case. During these status conferences the parties made
13 several representations, waivers, and stipulations in order to expedite the resolution of this
14 case: (1) Defendants waived all objections to venue; (2) Defendants represented to the
15 Court that they will not print, mail or distribute any ballots or instructions on the recall voting
16 procedures until August 20, 2003, at the earliest;[1] (3) all parties agreed that the appropriate
17 method for resolving this issue was on a motion for judgment on the pleadings and
18 Defendants agreed to waive any objection to Plaintiffs filing such a motion prior to
19 Defendants serving their answer; and (4) the parties agreed that because there were no
20 disputes of fact and that this case involves purely a matter of law, if the Court were to order
21 any sort of injunctive relief, it should be on a permanent, and not preliminary, basis.

22      The Court set an expedited briefing schedule so that this matter could be resolved by
23 the district court and allow for appellate review. Los Angeles County and San Diego County
24 contend that they must send the ballots to the printer no later than August 16, 2003, and

25

26      [1] Plaintiffs contend that Defendants are required by section 3103 of the California
27 Elections Code to send out certain ballots 60 days before the election, which in this case
   would be on August 8, 2003.  Defendants contend that they are not bound by this provision
28 in a recall election and that, in any event, such a deadline is unworkable because the names
   of any successor candidates will not be certified until August 9, 2003.  The applicability of
   section 3103 is not an issue in Plaintiffs' complaint.

03cv1460

1   August 20, 2003, respectively.

2   **III.   DISCUSSION**

3       The California recall procedure is set forth in the California Constitution and the

4   California Elections Code.  Article 2, section 14 of the California Constitution provides:

5       (a) Recall of a State officer is initiated by delivering to the Secretary of State
        a petition alleging reason for recall.  Sufficiency of reason is not reviewable.
6       Proponents have 160 days to file signed petitions.
        (b) A petition to recall a statewide officer must be signed by electors equal in
7       number to 12 percent of the last vote for the office, with signatures from each
        of 5 counties equal in number to 1 percent of the last vote for the office in the
8       county.

9   Article 2, section 15 provides for the recall election:

10      (a) An election to determine whether to recall an officer and, if appropriate, to
        elect a successor shall be called by the Governor and held not less than 60
11      days nor more than 80 days from the date of certification of sufficient
        signatures.
12          . . . .

13      (c) If the majority vote on the question is to recall, the officer is removed and,
        if there is a candidate, the candidate who receives a plurality is the successor.
14      The officer may not be a candidate, nor shall there be any candidacy for an
        office filled pursuant to subdivision (d) of Section 16 of Article VI.
15

16      Section 11320 of the Elections Code provides that the recall ballot shall have the

17  following question: "Shall Gray Davis be recalled (removed) from the officer of Governor?"

18  The voter shall mark "yes" or "no" to the right of the question.  Section 11384 of the Elections

19  Code provides that, "If a majority of the votes on a recall are 'Yes', the officer sought to be

20  recalled shall be removed from office upon qualification of his successor."  Section 11385

21  provides that "If at a recall election an officer is recalled, the candidate receiving the highest

22  number of votes for the office shall be declared elected for the unexpired term of the recalled

23  officer."

24      The provision in question here, section 11382, provides that, "No vote cast in the

25  recall election shall be counted for any candidate unless the voter also voted for or against

26  the recall of the officer sought to be recalled."  Section 11382 is derived from the 1911

27  amendment to the California Constitution which provided that:

28      [N]o vote cast shall be counted for any candidate for said office unless the
        voter also voted on said question of the recall of the person sought to be

                                              3

1   recalled from said office.

2   1911 Cal. Const., art. XXIII, § 1.   The provision at issue here was removed from the

3   California Constitution but enacted in its present form in section 11382.

4       Plaintiffs contend that section 11382 violates their rights under the United States

5   Constitution because it requires them to vote either "yes" or "no" on the issue of whether

6   Governor Davis should be recalled as a prerequisite for counting their votes on any

7   successor candidates for Governor.   Plaintiffs allege that while they fully intend and desire

8   to vote on who will be the next Governor, should Governor Davis be recalled, they do not

9   want to vote on the recall issue itself.   Some of the Plaintiffs state that they are morally

10  and/or politically opposed to voting on the recall because "the recall is either an illegitimate

11  political process in general, or especially in the Davis Recall," and believe that participating

12  in the process by voting "yes" or "no" "either legitimates the process or is untenable as a

13  matter of personal principle." Motion at 19.   Other Plaintiffs state that they are "agnostic on

14  the merits of the recall" and therefore prefer not to vote one way or the other on the issue.

15      Plaintiffs allege that section 11382 violates their Constitutional rights to due process

16  and equal protection under the Fourteenth Amendment because if they do not vote on the

17  recall issue, their votes on potential successors will not be counted.   Plaintiffs contend that

18  their rights under the First Amendment are also violated because they are being forced to

19  speak on the recall decision despite their wishes not to do so.   Additionally, Plaintiffs allege

20  that this provision violates their right "not to vote" which is "implicitly recognized in the Ninth,

21  Fourteenth, Fifteenth, Nineteenth, and Twenty-Sixth Amendments."   Motion at 3.

22      It is clear to the Court, and not contested by Defendants, that the case is ripe for

23  determination and that Plaintiffs have standing to challenge section 11382.   Since the

24  petition for the Davis Recall has been certified, an election date has been set, and the

25  challenged election provision is still in effect, there is an actual "case or controversy." The

26  named Plaintiffs are all registered voters, either in San Diego County or Los Angeles County

27  and have stated both their intention to vote for any successor to the current Governor and

28  their intention not to vote on the issue of the recall, or their opposition to being coerced into

4

1  having to vote on the recall issue. This is sufficient to meet the standard for individual
2  standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

3  California Informed Voters Group ("CIVG"), an unincorporated association, is also a
4  plaintiff in this suit. An association has standing to bring suit on behalf of its members when
5  "(a) its members would otherwise have standing to sue in their own right; (b) the interests it
6  seeks to protect are germane to the organization's purpose; and (c) neither the claim
7  asserted nor the relief requested requires the participation of the individual members in the
8  lawsuit. Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977). It is
9  clear from an examination of the pleadings, and the fact that the individual plaintiffs have
10  standing, that CIVG has standing to sue as well. See Fair Housing in Huntington Committee,
11  Inc. v. Town of Huntington, 316 F.3d 357, 363 (2nd Cir. 2003) (explaining that because "at
12  least two of FHHC's members have standing . . . thus, [FHHC] may bring suit in a
13  representative capacity.").

14  A judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is properly
15  granted "when, taking all allegations in the pleadings as true, the moving party is entitled to
16  judgment as a matter of law." Nelson v. City of Irvine, 143 F.3d 1196, 1200 (9th Cir. 1998)
17  (citing McGann v. Ernst & Young, 102 F.3d 390, 392 (9th Cir. 1996)). A motion for judgment
18  on the pleadings brought pursuant to Rule 12(c) may be brought "[a]fter the pleadings are
19  closed but within such time as not to delay the trial . . . ." Fed. R. Civ. P. 12(c).

20  In order to be granted a permanent injunction, a party must demonstrate (1) the
21  likelihood of substantial and immediate irreparable injury, and (2) the inadequacy of
22  remedies at law. See G.C. and K.B. Investments, Inc. v. Wilson, 326 F.3d 1096, 1107 (9th
23  Cir. 2003).

24  While Plaintiffs base their challenges on 42 U.S.C. § 1983 and various Constitutional
25  amendments, all these claims can be addressed under a single analytical framework.[2] See
26  LaRouche v. Fowler, 152 F.3d 974, 987 (D.C. Cir. 1998) ("[W]e have previously recognized

27

28  [2] The "state action" prong of the section 1983 analysis is clearly met here because
    Defendants are state officials who are sued only in their official capacities. Therefore, the
    only issue is whether Defendants' actions violate Plaintiffs' Constitutional rights.

5

1   that the case law relating to section 1983 claims, and that relating to claims brought directly

2   under the Constitution, have been assimilated in most . . . respects.'"). Furthermore, the

3   Supreme Court's recent election law cases direct that Constitutional challenges brought

4   under the First and Fourteenth Amendments be addressed "using a single basic mode of

5   analysis." Id. at 987-88 (citing Anderson v. Celebrezze, 460 U.S. 780, 787 n.7 (1983) ("[W]e

6   base our conclusions directly on the First and Fourteenth Amendments and do not engage

7   in a separate Equal Protection Clause analysis."); see also, Republican Party v. Faulkner

8   County, 49 F.3d 1289, 1293 n.2 (8th Cir. 1995) ("In election cases, equal protection

9   challenges essentially constitute a branch of the associational rights tree.").

10        Although the Supreme Court has stated that Constitutional challenges to specific

11   provisions of state elections laws "cannot be resolved by any 'litmus-paper test,'" the Court

12   has identified the proper analytic framework for addressing these issues.  As the Court

13   stated in Anderson v. Celebrezze, 460 U.S. 780 (1983):

14        [A] court must resolve such a challenge by an analytical process that parallels
     its work in ordinary litigation.  It must first consider the character and
15        magnitude of the asserted injury to the rights protected by the First and
     Fourteenth Amendments that the plaintiff seeks to vindicate.  It then must
16        identify and evaluate the precise interests put forward by the State as
     justifications for the burden imposed by its rule.  In passing judgment, the
17        Court must not only determine the legitimacy and strength of each of those
     interests; it also must consider the extent to which those interests make it
18        necessary to burden the plaintiff's rights.  Only after weighing all these factors
     is the reviewing court in a position to decide whether the challenged provision
19        is unconstitutional.

20   Id. at 789.

21        The "rigorousness" of the inquiry, however, depends on "the extent to which a

22   challenged regulation burdens First and Fourteenth Amendment rights." Burdick v. Takushi,

23   504 U.S. 428 (1992).  The Court in Burdick outlined a two-tier approach to this issue:

24        [W]hen those rights are subjected to severe restrictions, the regulation must
     be narrowly drawn to advance a state interest of compelling importance. But
25        when a state election law provision imposes only reasonable,
     nondiscriminatory restrictions upon the First and Fourteenth Amendment rights
26        of voters, the State's important regulatory interests are generally sufficient to
     justify the restrictions.

27

28   Id. at 434 (internal citations omitted).

     Therefore, this Court must first determine the extent to which section 11382 burdens

6

1    Plaintiffs' First and Fourteenth Amendment rights and whether such a burden is either

2    "severe" or only a "reasonable nondiscriminatory restriction."

3        Plaintiffs are certainly correct that the "right to vote freely for the candidate of one's

4    choice is of the essence of a democratic society, and any restrictions on that right strike at

5    the heart of representative government." Reynolds v. Sims, 377 U.S. 533, 555 (1964).

6    Furthermore, "[n]o right is more precious in a free country than that of having a voice in the

7    election of those who make the laws under which, as good citizens, we must live." Westbury

8    v. Sanders, 376 U.S. 1, 17 (1964).   Implicit in the right to vote is the right to have that vote

9    counted. See Davis v. Bandemer, 478 U.S. 109, 124 (1986) ("[E]veryone ha[s] the right to

10    vote and to have his vote counted.").

11        This does not mean, however, that states cannot effect "substantial regulation" of their

12    elections so that they may be "fair and honest" and to ensure that "some sort of order, rather

13    than chaos, is to accompany the democratic processes." Storer v. Brown, 415 U.S. 724, 730

14    (1974).  As a practical matter, states have "evolved comprehensive, and in many respects

15    complex, election codes regulating in most substantial ways . . . the time, place, and manner

16    of holding primary and general elections, the registration and qualifications of voters, and the

17    selection and qualification of candidates." Id.   In this case, Plaintiffs are not challenging any

18    of these types of election regulations.  In fact, it is uncontested that the individual Plaintiffs

19    meet all the qualifications to be registered voters and fully intend to comply with the time and

20    place requirements to vote in the Davis recall.  Plaintiffs are only challenging the requirement

21    that they must vote on one issue in order for their vote to be counted on another issue.[3]

22        Defendants, however, challenge Plaintiffs' basic assertion that the recall election

23    presents two separate and distinct questions to be voted on.  According to Defendants,

24    "voters are asked to answer only one, albeit compound, question: should the incumbent be

25    recalled and, if so, who should replace him or her." Kevin Shelley, Secretary of State of the

26

27       [3] The Court does not consider the procedure in section 11382 to be analogous to the

28    successive ballots a person may be required to cast in a primary and a general election or to an attempt by a state to fairly and efficiently channel and limit the generalized expressive functions the voting process itself serves.

State of California's Response to Plaintiffs' Motion for Judgment on the Pleadings ("Shelley Response") at 4.  At the heart of this argument is the contention that the recall and the successor election are in fact the same process.  As Defendants state in their response:

> When an official is recalled, his or her successor is elected by a plurality vote from among a group of successor candidates appearing on the same ballot. This eliminates the need for a subsequent special election. And even though the recalled official cannot appear as a candidate to be his or her own successor, he or she is a 'candidate' for their office, and a vote against the recall is a vote for the incumbent. Thus, by facing a vote on the issue of the recall Governor Davis is, in essence, a candidate for Governor on the recall ballot.

Id. at 3, n.8.  The Court finds this argument without merit because an incumbent who wins 49% of the "no" vote can still be replaced by a candidate who receives a mere 34% plurality of the votes in a three-way race for a successor or 26% of the vote in a four-way race. Therefore, it cannot be contended that the incumbent is, in effect, on the same ballot as the potential successors.

Defendants also proffer two analogies in support of their position that no unconstitutional pre-qualification exists in this case.  First, they contend that the recall process is similar to "voters' consideration and approval or rejection of proposed bond acts." Id.  While it is true that such proposals are often multi-faceted as to the projects the bond will authorize, and voters do not have a choice to limit which projects the bond may support, Defendants have provided no evidence that such bonds, or any other ballot propositions, allow for or require two or more separate votes.  In the case of a bond it is certainly reasonable for a state to inform the electorate as to which project or projects the allocated money will fund.  In this case, the voters are not told who will be the new governor should they vote to recall the incumbent.  Rather, voters are given a choice of candidates to select from if the recall passes.  Therefore, the Court does not find the bond analogy to be apposite.

Defendants' second analogy is to a presidential election where "a voter - speaking with one vote - makes a choice for both the President and Vice President."  Shelley Response at 4, n.9.  The Court finds this analogy equally inapposite. In a presidential election, votes are cast for electors, not directly for the candidates. Members of the electoral

03cv1460

1   college are bound to vote for the candidates of their party.  While it is clear that this
2   procedure passes Constitutional muster, it is sufficiently distinguishable from the recall
3   process at issue in this case. <u>See</u> U.S. Const., art. II, § 1, cl. 2; <u>Ray v. Blair</u>, 343 U.S. 214
4   (1952).

5       Defendants argue that even if the Court construes the recall process to include two
6   separate questions, the requirement that a person vote on both questions "imposes only a
7   minimal burden on voters."  Shelley Response at 7.  Defendants contend that because "a
8   recall election is a drastic form of 'impeachment by the voters,' California can impose the
9   minimal burden of requiring a voter who chooses to participate in the recall process to
10  participate in deciding whether [the elected] official should be removed from office in order
11  to participate in deciding on the officer's successor." <u>Id.</u>  To the extent this argument simply
12  repeats Defendants' contention that the recall presents only one question and that requiring
13  a voter to check two boxes to answer it is only a minimal burden, the Court has already
14  addressed and rejected this proposition.  To the extent that Defendants seek to justify the
15  requirement that a person vote on both questions, i.e., because it is a "drastic form of
16  impeachment," the Court considers this argument more properly analyzed as one of the
17  State's justifications for the burden on a voter's rights, not as indicative of the weight of that
18  burden.  Accordingly, the Court finds that this argument does not justify the determination
19  that section 11382 imposes "only a  reasonable, nondiscriminatory restriction[ ] upon the
20  First and Fourteenth Amendment rights" of California voters. <u>Burdick</u>, 504 U.S. at 434.

21      The Court also finds Defendants' reliance on the actual holding of <u>Burdick</u> to be
22  unavailing.  In <u>Burdick</u>, the Supreme Court held that Hawaii's prohibition on write-in voting
23  did not unreasonably infringe upon its citizens' rights under the First and Fourteenth
24  Amendments because it was a reasonable regulation of the election process. However, the
25  Court also stated that while it is not the function of the election process to "provide a means
26  of giving vent to short-range political goals, pique, or personal quarrels," the "[r]easonable
27  regulation of elections *does not* require voters to espouse positions that they do not support
28  . . . ." 504 U.S. at 438 (discussing reasons for finding state law banning write-in candidates

9

1    not to be a severe burden on plaintiff's right to vote) (internal citations omitted). In <u>Burdick</u>,

2    the Court construed the burden on voting rights to be an issue of timely access to the ballot

3    and found that because Hawaii's electoral system provided "easy access to the ballot . . .

4    any burden on voters' freedom of choice and association is borne only by those who fail to

5    identify their candidate of choice until days before the primary." 504 U.S. at 436-37. This

6    is not the case here. Plaintiffs are not seeking to have any particular candidate put on the

7    ballot. Nor is this an issue of timing. Plaintiffs' rights will be affected to the same degree

8    regardless of when Plaintiffs seek to assert them. Plaintiffs in this case want to vote on one

9    of the issues that is actually presented on the ballot. They simply do not want to be forced

10   to vote on a different issue in order for that vote to be counted.

11       Because section 11382 will effectively bar Plaintiffs from having their otherwise valid

12   vote for a gubernatorial successor counted, or compel them to vote on a separate issue

13   upon which they do not wish to vote, the Court determines that section 11382 effects a

14   severe restriction on their Constitutional right to vote. <u>Id.</u> at 434. Indeed, if Plaintiffs decline

15   to vote on the question of recall as a protest of the recall process, they are denied the right

16   to have their vote counted on the question of who shall govern them.  In order to have a

17   condition precedent to the exercise of the right to vote for who will be one's Governor,

18   California must advance evidence it is "narrowly drawn to advance a state interest of

19   compelling importance." <u>Id.</u>

20       Defendants contend that the recall election is a special interest election where the

21   State need only show an important regulatory interest rather than a compelling interest.

22   However "special" and historic the present recall election is, it is not a special interest

23   election as that term is used by the Supreme Court. In <u>Hill v. Stone</u>, 421 U.S. 289 (1975),

24   the Supreme Court noted that a special interest election could limit voters to those sharing

25   that special interest. But the Court construed special interest election as those limited

26   circumstances such as a water district where the disproportionate effect of the governing

27   body's activities was on specific landowners as a group. 421 U.S. at 295 n.5. The selection

28   of a governor is not an interest special only to those favoring recall. Rather, it is of

10

1  paramount interest to all of California's voters. As the Supreme Court in Hill v. Stone held,

2  in a general interest election, "restriction on the franchise other than residence, age, and

3  citizenship must promote a compelling state interest in order to survive constitutional attack."

4  421 U.S. at 289.

5      In offering a sufficiently compelling state interest to justify the restriction imposed by

6  section 11382, Defendants proffer several reasons. First, Defendants argue that "[a]ssuring

7  that an elected official is not removed from office unless a majority of those voters who

8  choose to participate in the recall process vote for his or her removal furthers the important

9  state interest of fostering an effectively functioning government and guarding against

10 disruption in state government."   Shelley Response at 8.   Defendants explain that

11 "[r]emoving an elected official and replacing him or her without the certainty that a majority

12 of those voters who chose to participate in the recall process actually voted to recall the

13 officer, could lead to chaos and disruption in the functioning of state government." Id.

14     While Defendants are correct in their assertion that a state has a permissible and

15 compelling interest in "the stability of its political system," Storer v. Brown, 415 U.S. 724, 736

16 (1974), they have not adequately demonstrated that chaos will result without section 11382

17 or how section 11382 will stem the flow of any such "chaos and disruption." Regardless of

18 the applicability or non-applicability of section 11382, whether or not Governor Davis is

19 recalled will be decided by a majority of those who vote on that issue. Likewise, if Governor

20 Davis is in fact recalled, his successor will be chosen by a plurality of those who vote on that

21 issue regardless of whether section 11382 is in effect or not.

22     Indeed, under section 11382, one can vote on the recall but not on the election of a

23 successor. This possibility seems to create the same concern that Defendants argue section

24 11382 was designed to prevent. Modern vote counting procedures will provide a tally of the

25 "yes" and "no" votes and the votes for the several potential successors. It is hard to imagine

26 any chaos that will truly result.

27     It is possible that Defendants are really arguing that unless a great number of people

28 vote on the recall issue, then the successor election will appear to be illegitimate and, as

1  such, will have a destabilizing effect on the running of the State government. To the extent

2  section 11382 remains in force, however, it actually undermines this argument because it

3  will likely discourage those voters who, like Plaintiffs, would otherwise vote for a successor.

4  To the extent the state is using access to voting for a successor as a carrot to entice people

5  to legitimize the recall process or a stick to punish those who do not, such a rationale is

6  unjustified. As the Supreme Court stated in Burdick, it is not a reasonable regulation of

7  elections for a state to "require voters to espouse positions that they do not support." 504

8  U.S. at 438.

9       Defendants also argue that the State has an important governmental interest in

10  ensuring that only those voters with a "direct" interest in the successor election are allowed

11  to vote and an interest in making certain that those votes are not diluted. The Court finds

12  these arguments unpersuasive. Simply because a person is either opposed to the recall

13  election process or agnostic to its merits, does not mean that that person is not directly

14  interested in who will be their next Governor. Defendants' supporting argument, that without

15  section 11382 the public will never know whether an elected successor was validly recalled

16  by a majority of those who participated in the recall process, is not in fact true. As noted

17  above, the tally on both recall and successor will be clear and apparent.

18       Defendants argue that section 11382 furthers the important interest of the State in

19  protecting the integrity and continuity of validly elected officials. They argue that "[s]ection

20  11382 also protects the peoples' interest in seeing their elected officials remain in office

21  unless the voters show a substantial interest in whether the official is removed or not."

22  Shelley Response at 8. However, section 11382 actually does not serve this purpose and

23  has the opposite effect.

24       First, there is no requirement as to the number of voters who must vote on the recall.

25  While twelve percent of those who cast their vote in the preceding  gubernatorial election

26  must sign a recall petition, Cal. Const., art. II, § 14(b), there is no requirement that any

27  number of voters actually cast a recall vote. Thus, if only one percent of voters who voted

28  in the last gubernatorial election vote in the recall, the recall could be decided by as little as

03cv1460

1  slightly more than one-half of one percent of the votes cast in the regular election. Neither

2  section 11382 nor the recall provisions mandate a recall only when the vote demonstrates

3  that the "voters show a substantial interest in whether the official is removed or not."

4       Second, section 11382 has the effect of reducing the vote on who shall lead the State

5  as Governor as it disallows votes by otherwise properly registered voters. Thus, section

6  11382 allows the present Governor to be removed by a smaller vote than by which he or she

7  was elected and the successor governor elected by even less votes. Section 11382 actually

8  would discourage persons who wish to abstain from voting in the recall from participating in

9  the overall recall process entirely.

10      Defendants also argue that without section 11382 persons who only have "an indirect

11  or remote interest" in the recall will decide who will replace a recalled officer. Shelley

12  Response at 9. However, it must be underscored that voters are not merely voting on who

13  will be replacing a recalled officer, they are voting on who will be their Governor - that is, who

14  will govern the people of California. All of the registered voters of California have a separate

15  and paramount interest in that decision.

16      Finally, Defendants argue that if the Court strikes down section 11382 as

17  unconstitutional, this  may create a situation where uncertainty arises in the interpretation

18  of another section of the statute, namely California Elections Code section 11383. Section

19  11383 states: "If one-half or more of the votes at a recall *election* are "No", the officer sought

20  to be recalled shall continue in office." (emphasis added). In contrast, section 11384 states:

21  "If a majority of the votes on a recall *proposal* are "Yes", the officer sought to be recalled

22  shall be removed from office upon the qualification of his successor." (emphasis added).

23  Defendants contend that because section 11384 uses the words "recall proposal", whereas

24  section 11383 uses the words "recall election", it is possible that an ambiguous situation

25  could arise "if the number of 'No' votes cast on the *recall proposal* exceed the number of

26  'Yes' votes but do not total 'one-half or more' of the total votes cast in the *recall election*."

27  Sally McPherson, Registrar of Voters for the County of San Diego's Joinder in Opposition

28  to Plaintiffs' Motion at 3.

13

1    It is clear to the Court that the words "recall election" in section 11383 and "recall

2  proposal" in section 11384 are synonymous and refer solely to the question of whether or

3  not the incumbent official shall be recalled. Both sections 11383 and 11384 refer to the vote

4  tally of "yes" or "no" votes and not to the votes cast for successors.  See Wells v. Marina

5  City Properties, Inc., 29 Cal.3d 781 (1981) (a construction which makes sense of an

6  apparent inconsistency is to be preferred to one which renders statutory language useless

7  or meaningless); Hough v. McCarthy, 54 Cal.2d 273 (1960) (a court must, where reasonably

8  possible, harmonize statutes, reconcile seeming inconsistencies in them and construe them

9  to give force and effect to all their provisions); Kydd v. City and County of San Francisco, 37

10  Cal. App. 598 (1918) (statutes must be so construed that the whole, if possible, may stand).

11    The Court holds that section 11382 substantially burdens the right of citizens of

12  California to vote on a successor governor in the event of a recall by conditioning the

13  counting of that vote on whether the voter cast a ballot on the question of recall. The Court

14  finds that the precise interests put forward by the State as justifications for the burden

15  imposed by section 11382 neither advance a state interest of compelling importance nor

16  even an important regulatory interest of the State.  Burdick at 434 (quoting Anderson v.

17  Celebrezze, 460 U.S. 780, 789 (1983)).

18    Section 11382, however, does more than unconstitutionally burden Plaintiffs' right to

19  vote. It forces them to take a position on the question of recall, of which the failure to do so

20  results in the cancellation of their vote of who should be their governor.  Such an effect

21  violates Plaintiffs' First Amendment Right of free expression. See, e.g., Wooley v. Maynard,

22  430 U.S. 705, 714 (1977) ("The right of freedom of thought protected by the First

23  Amendment against state action includes both the right to speak freely and the right to

24  refrain from speaking at all . . . . The right to speak and the right to refrain fro speaking are

25  complementary components."); Pacific Gas & Elec. Co. v. Public Utilities Comm'n, 475 U.S.

26  1, 16 (1986) ("[T]he choice to speak includes within it the choice of what not to say.").

27    The parties have not cited nor has the Court found any case directly on point.  While

28  this is a case of first impression, the words of the Court of Appeals for the First Circuit in

03cv1460

1  Ayers - Schaffner v. DiStefano, 37 F.3d 726 (1st Cir. 1994) seem apropos.  There a school
2  board election was invalidated and only those who voted in the original balloting were
3  permitted to vote in the re-election.  The Court declared this restriction unconstitutional
4  saying:

> The right to vote "is of the most fundamental significance under our
> constitutional structure" . . . and depriving a qualified voter of the right to cast
> a ballot because of failure to vote in an earlier election is almost
> inconceivable."

37 F.3d at 727 (internal citations omitted).

Here too, what is at stake is the right of a voter to decide who shall succeed the
Governor, if recalled.  Every voter, whether they voted for or against that recall has a
paramount interest in choosing the person who will govern them.  Whatever reasons for
section 11382 existed in 1911, they fail to pass Constitutional muster ninety-two years later.

**IV.   CONCLUSION**

Plaintiffs' motion for judgment on the pleadings is GRANTED.  The Court holds that
California Elections Code section 11382 is unconstitutional.  Furthermore, the Court finds
that Plaintiffs have made the requisite showing for a permanent injunction, namely that they
have demonstrated (1) the likelihood of substantial and immediate irreparable injury, and (2)
the inadequacy of remedies at law.  See G.C. and K.B. Investments, Inc. v. Wilson, 326 F.3d
1096, 1107 (9th Cir. 2003).  Defendants, as well as any individual, agency, or entity acting
on their behalf or pursuant to their authority, or any other individual, agency or entity with
actual notice of this order, are permanently enjoined from (a) enforcing in any manner and
in any recall election conducted in the State of California the provisions of California
Elections Code section 11382, (b) preparing, approving, or disseminating to any individual,
agency or entity any ballots, sample ballots, voter instruction materials, or other documents
that state, in sum or substance, that a voter must cast a vote on the recall for their vote for
any successor candidate to be counted, or otherwise attempt to persuade or inform voters
that their vote on a successor candidate will not be counted unless they also cast a vote for
or against the recall; and (c) failing to count any otherwise valid ballot or vote based on the
fact that the voter did not vote either "yes" or "no" on the question of recalling the Governor.

03cv1460

1  |  Finally, the Court holds that the words "recall election" in California Elections Code

2  |  section 11383 refer only to the "yes" or "no" vote for or against recalling the incumbent

3  |  official.

4

5  |  **IT IS SO ORDERED.**

6  |  Dated: _July 29, 2003_

7  |  _Barry Ted Moskowitz_

   |  **HONORABLE BARRY TED MOSKOWITZ**

8  |  United States District Judge

   |  Copies to:

9  |  All Parties and Counsel of Record

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

03cv1460